**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
Andrew J. Kubik (SBN 246092)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org
Email: akubik@nicholaslaw.org

Attorneys for GEORGE FLOREA,
on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE FLOREA, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE CORNWELL QUALITY TOOLS COMPANY, an Ohio corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br>**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**<br>**(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, §§ 221-223];**<br>**(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**<br>**(4) FAILURE TO PAY OVERTIME [LAB. CODE, § 510];**<br>**(5) FAILURE TO PROVIDE MEAL PERIODS [LAB. CODE, § 226.7];**<br>**(6) FAILURE TO PROVIDE REST BREAKS [LAB. CODE, § 226.7];**<br>**(7) FAILURE TO PAY WAGES [LAB. CODE, §§ 1194, 1197];**<br>**(8) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.];**<br>**(9) DECLARATORY RELIEF.**<br><br>**DEMAND FOR JURY TRIAL** |

GEORGE FLOREA, an individual ("Mr. Florea," or "Plaintiff"), on behalf of himself and all others similarly situated and similarly aggrieved employees, brings this action against Defendant THE CORNWELL QUALITY TOOLS COMPANY, an Ohio corporation ("Cornwell" or "Defendant"), and alleges on information and belief as follows:

## INTRODUCTION

1. Cornwell manufactures, distributes, and sells professional automotive repair tools and related equipment. Its primary customers are mechanical service professionals and the shops where such individuals work.

2. Under the guise of its standard "Dealer Franchise Agreement," ("Agreement") Cornwell obtains the labor of "Dealers" like Mr. Florea to carry out necessary services within one of its distribution channels—mobile dealers. Under the management and control of Cornwell, these Dealers perform advertising, sales, delivery, and maintenance-related tasks. Despite their central role in Cornwell's tools sales business, Cornwell uniformly misclassifies its Dealers as "independent contractors."

3. By refusing to recognize Dealers as employees, Cornwell cheats these individuals out of protections provided by California law such as overtime pay and reimbursement of business expenses. And, further, Cornwell passes along business losses to its Dealers such as lost and missing inventory and repair costs. In addition to denying these workers' core benefits, Cornwell's misclassification also robs the State of important employee tax revenue and gives Cornwell an undue advantage over law-abiding competitors who bear the necessary expense associated with employing similar workers.

4. This Class Action seeks recovery for violations of California's Labor Code, Industrial Welfare Commission Wage Orders ("Wage Orders"), the California Unfair Competition Law on behalf of Plaintiff and similarly situated Dealers in California.

## JURISDICTION & VENUE

5. There is subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and there is more than $75,000 in controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1931(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

7. Mr. Florea is and at all relevant times was a resident of California. From 2018 to 2022 and January 2023 to February 2025, he worked as a Dealer for Cornwell in California.

8. Cornwell is an Ohio corporation with its principal place of business in Medina, Ohio. On information and belief, it is authorized to carry out and does carry out business in this County and is subject to personal jurisdiction in this County. On information and belief, Defendant engages misclassified "independent contractor" Dealers who work and reside in this State and County and are members of the proposed Class (defined below).

## GENERAL ALLEGATIONS

### A. Cornwell's Business Model

9. Cornwell manufactures, distributes, and sells tools and related products like toolboxes and service equipment ("Products"). It sells Products to mechanics, technicians, and other service professionals as well as businesses providing these services.

10. Cornwell advertises its tool products directly to these customers via TV, print, and online advertisements. Cornwell employs dedicated publication and marketing teams to carry out this advertising. These teams produce things like tool catalogs and flyers. They also initiate discount programs, promotions, and the like.

11. Cornwell also employs customer service employees who take product orders, provide pricing, and generally monitor for customer inquiries via phone, mail,

or web. Cornwell also directly takes customer inquiries regarding things like sales, warranties, products, and product services.

12. Cornwell carries out sales primarily, but not exclusively, via “Dealers” who drive around in mobile Dealership stocked with Cornwell tools (pictured below). Cornwell expects Dealers to work hard to carry out sales and service-related activities and to work over 40 per week, sometimes even in excess of 60 hours per week.

13. Depending on the time period, Cornwell itself has owned and operated the same territories that it sells to its “Dealers.”

14. Dealers go through extensive training, including classroom and field-based training, in addition to on the job “ride-alongs.” Cornwell has teams of employees dedicated to Dealer training. Likewise, Cornwell offers continuing education and training for Dealers so that they can sell Cornwell’s products as successfully as possible, benefiting Cornwell’s bottom line. Dealers also must attend quarterly, and annual meetings and other events organized by Cornwell.

15. Above Dealers, there are District Managers, Regional Managers, and Corporate Managers that provide training and guidance to Dealers. Most District Managers were formerly Dealers and Cornwell touts the ability for individuals to advance through Cornwell’s ranks after starting off as Dealers.

16. Cornwell assists Dealers with completing sales by processing payments, issuing warranties, and even setting up financing for Cornwell customers.

17. Cornwell has lists of customers that Dealers must service in addition to trying to garner new business.

**B. Cornwell Misclassifies Dealers**

18. Despite the integral nature of Dealers to Cornwell’s tool sales business and the level of control exercised by Cornwell, Cornwell classifies Dealers as “independent contractors” under its standard “Dealer Franchise Agreement” (“Agreement”).

19. Under this Agreement, Dealers must personally service a Cornwell-

defined territory of customers. The Dealers, like Mr. Florea, are bound by the contractual terms of the Agreement and cannot use employees or other agents to carry out the obligations.

20. The Agreement allows Cornwell to set the price that Dealers buy products from Cornwell in order to resell to “their customers.” Cornwell also sets the customer-level price, effectively having complete control over the “margin” or “commission” that the Dealers are able to earn. This is per se control of Dealers’ wages.

21. The Agreement has no end date, and the parties often carry on their relationship for years or even decades.

22. Cornwell also controls the vehicle Dealers uses for their work and the supplies that Dealers must carry and make available for customers. Dealers must continue to maintain Cornwell-mandated inventory and ordering levels or else risk losing their jobs. Dealers also must pay for, and wear Cornwell approved uniforms bearing the Cornwell name to match their Cornwell branded vehicles.

23. Dealers’ performance obligations do not end with making sales to Cornwell’s list of customers. Dealers also facilitate delivery of products and process customer returns. Likewise, they carry out and fulfill Cornwell’s warranty and repair obligations on Products sold to customers in their territory. Cornwell broadly reserves its right to amend or modify its repair, and warranty promises to customers that Dealers must carry out. No compensation is paid for these non-sales-based services. After allocating for these, among other, non-sales tasks, Dealers spend less than half of their working hours devoted to sales and cannot qualify for any sort of outside sales or other exemption under California law.

24. Cornwell broadly reserves the right to terminate Dealers. For example, Cornwell may terminate a Dealer for becoming unable to meet performance obligations for a given period of time. Where a Dealer fails to comply with any of Cornwell’s onerous standards, Cornwell also retains the unlimited right to take other

action in lieu of termination as it deems appropriate.

**C. Cornwell's Wage and Hour Violations**

25. Dealers pay Cornwell for the right to help sell its tools. This includes, but is not limited to, paying an initial fee for tool inventory upon becoming a Dealer, paying for training and the cost of attending training in Ohio, paying to "restock" returned Products that are not purchased and/or are returned by Cornwell's customers, paying for shipping and handling of Products, and paying software and licensing fees. Dealers also pay Cornwell interest on the above items to the extent Cornwell extends "credit" for tool purchases or the like.

26. Dealers also shoulder many other unreimbursed business expenses for Cornwell including but not limited to fuel/mileage, travel and meals, clothing and uniforms, truck payments, and business, vehicle, and health insurance.

27. By misclassifying Plaintiff as an independent contractors, Cornwell seeks to avoid various duties and obligations owed to employees under California's Labor Code and Industrial Welfare Commission ("IWC") Wage Orders, including: the duty to indemnify employees for all expenses and losses necessarily incurred in connection with their employment (Cal. Labor Code §2802; IWC wage order No. 1, §§ 8-9); the duty to refrain from unlawful deductions from wages (Cal. Labor Code §§ 221, 223, 400-410); the duty to provide off-duty meal periods (Cal. Labor Code §§ 512, 226.7; IWC wage order No. 1, § 11); the duty to authorize and permit paid rest periods (Cal. Labor Code §§ 226.7, 1194; IWC wage order No. 1, § 12); the duty to furnish accurate wage statements (Cal. Labor Code §§ 226, 226.3); the duty to pay overtime premium pay under California state law (Cal. Labor Code § 510, IWC wage order No. 1), and other legal obligations.

28. Plaintiff challenges Cornwell's policy of willfully and unlawfully misclassifying Dealers as "independent contractors" and thereby refusing to indemnify them for employment-related expenses and losses, taking wrongful deductions from their wages, coercing them to purchase necessary services and items,

failing to provide off-duty meal periods, failing to authorize and permit paid rest periods, failing to document actual hours worked (among other things) on pay statements as required by California law, and failing to pay state and federal overtime premium pay.

29. Plaintiff brings claims for reimbursement of business expenses and losses, reimbursement of deductions wrongfully taken from wages, meal period pay, rest period pay, inaccurate wage statements, unpaid minimum wage (and liquidated damages), unpaid overtime premium pay (and liquidated damages) statutory and civil penalties, interest, and attorneys' fees and costs, under Cal. Labor Code §§218.5, 221, 223, 226, 226.3, 226.7, 400-410, 1194, 1194.2, and 2802, Cal. Code of Civil Procedure § 1021.5. Plaintiffs also seek relief, pursuant to Cal. Business and Professions Code §§ 17200-17208 (also referred to herein as the "UCL"), including restitution and disgorgement of all benefits Defendants have obtained from the unlawful practices referenced above and detailed below, and injunction against these practices going forward.

### D. Cornwell's Arbitration Provisions

30. Also at issue in this Complaint is Cornwell's arbitration provisions of the Dealer Franchise Agreement.

31. Cornwell is presently threatening to file an arbitration demand in Ohio against Plaintiff on the basis of unresolved accounts from when he was working as a Dealer.

32. Cornwell's arbitration demand against Plaintiff relies on the arbitration provision found in paragraph 20 of Plaintiff's 2023 Dealer Franchise Agreement, which states in part:

> Any claim or controversy in connection with, arising out of, or relating to the Agreement between Dealer and Cornwell shall be settled by binding arbitration in accordance with the rules pertaining to commercial dispute arbitration then existing with the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. Such

> arbitration shall take place in such locations as the parties mutually agree, and in the absence of such agreement, in Akron, Ohio. The laws applicable to the arbitration procedure shall be the laws of the State of Ohio. The award of the arbitrator(s) shall be the sole remedy between the parties regarding any claims, counterclaims, issues presented or pled to the arbitrator(s).

33. Furthermore, the California Appendix to Plaintiff's Dealer Franchise Agreements states:

> The Franchise Agreement requires binding arbitration. The arbitration will occur at the location that you and Cornwell agree, or, in the absence of any agreement, in Akron, Ohio. Each party shall pay its own costs and expenses, including reasonable attorney's fees incurred by it; provided, however,· any costs incident to enforcing the award, shall to the maximum extent permitted by the law, be charged against the party resisting the enforcement. This provision may not be enforceable under California law.

34. The Franchise Disclosure Document issued to Plaintiff prior to his work for Cornwell and signing the Dealer Agreement also had similar disclaimer language in it.

35. Cornwell's arbitration provision set forth in its Dealer Franchise Agreements is unenforceable as there was no meeting of the minds on the arbitration clause including its forum selection clause. The Ninth Circuit has held that language indicating that a clause may not be enforceable in California means the plaintiff has "no reasonable expectation that it had agreed to a forum other than California." *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999). Where an arbitration provision lacks a meeting of the minds as to the selected forum, the arbitration provision is unenforceable. *See e.g.*, *Winter v. Window Fashions Professionals, Inc.*, 166 Cal. App. 4th 943, 950 (2008); *Nygaard v. Prop. Damage Appraisers, Inc.*, 2017 WL 8793228, at *3 (E.D. Cal. Dec. 28, 2017).

36. The Central District of California has agreed with this exact interpretation. Specifically, in *Salinas v. Cornwell Quality Tools Co.*, 2020 WL 4258788 (C.D. Cal. Mar. 20, 2020), Cornwell attempted to enforce arbitration

provisions identical to those at issue here. *See Id.* at *2. The *Salinas* court, in applying *Winter* and *Nygaard*, found that no agreement to arbitrate applicable to plaintiff's claims existed between Cornwell and the plaintiff. *Id.* at *4.

37. Additionally, Cornwell's forum selection provision violates California Business & Professions Code Section 20040.5. It also violates public policy to require an employee like Plaintiff to arbitrate out of state. This cuts against Labor Code section 925 as well.

38. Cornwell's arbitration provisions separately fail because they are unconscionable. The provisions are presented to Dealers, including Plaintiff, on a take-it-or-leave-it basis. The provisions also incorporate the AAA Commercial Rules and call for cost-shifting, which is unconscionable in an employment setting. Attempting to force workers to travel out of state and apply out of state (Ohio) law is also unconscionable among other aspects of the arbitration clause.

## CLASS ALLEGATIONS

39. Pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this lawsuit as a Rule 23(b)(3) class action on behalf of himself and all other similarly situated members of the Class, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

40. **Class Period.** The Class Period shall be defined as: from four years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable, statutory, or other forms of tolling.

41. Plaintiff seeks to represent the following Class of persons:

> All individuals during the Class Period who worked in California for Cornwell as "Dealers," or any similar title, and who were not classified as employees.

42. The Class does not include Defendant, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

43. Plaintiff reserves the right to amend the above Class and to add additional classes and sub-classes as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

44. **Numerosity.** The potential members of each Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiff is informed and believes that there are greater than 50 individuals meeting the Class definition. Defendant has access to data sufficient to identify the members of the Class.

45. **Adequacy of Representation.** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and individual Plaintiff. Plaintiff's attorneys are highly experienced in employment Class action litigation. Plaintiff intends to prosecute this action vigorously.

46. **Common Questions of Law and Fact.** There are predominant common questions of law and fact, as well as common answers to those questions, such that there is a community of interest amongst Plaintiff and the claims of each member of the Class as follows:

a. Whether Defendant misclassified Dealers as "independent contractors" instead of employees;

b. Whether Defendant exercised control over the wages, hours, or working conditions of Dealers;

c. Whether Dealers work within Cornwell's business;

d. Whether Defendant failed to reimburse Dealers for expenses;

e. Whether Defendant made illegal deductions from Dealers earnings;

f. Whether Defendant properly provided meal and rest periods to Dealers, including pay for such periods;

g. Whether Defendant paid Dealers all wages when due;

h. Whether Defendant provided proper wage statements to Dealers;

i. Whether Defendant failed to properly pay Dealers overtime; and

j. Whether Defendants engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 *et seq.* as it relates to Dealers.

47. **Typicality.** The claims of Plaintiff are typical of the claims of all members of the Class because Defendant applied and continues to apply its illegal classification and pay practices to all Dealers.

48. **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Failure to Reimburse Expenses—

### Lab. Code, § 2802 and IWC wage order No. 1, §§ 8-9

49. Plaintiff incorporates by reference every allegation contained above.

50. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

51. As alleged above, Plaintiff and the Class incurred business expenses on

Cornwell's behalf. They were never reimbursed because they were uniformly misclassified as independent contractors.

52. The California Labor Code, section 2802, and California's Wage Order 1, section 8 and 9 require that employers reimburse employees for business expenses reasonably incurred. Defendant failed to do so.

53. Mr. Florea and the Class have been damaged by Cornwell's failures in this respect in an amount to be proven at trial.

54. Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on Cornwell's violations.

## SECOND CAUSE OF ACTION

### Unlawful Deductions From Wages—

### Lab. Code, §§ 221-223 and Wage Order 1, §§ 8-9

55. Plaintiff incorporates each and every allegation contained above.

56. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

57. Under Labor Code, section 221 it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. This protection extends to deductions for mistakes in employees' work or other non-malicious conduct. Wage Order 1, sections 8 and 9, further provide that the only circumstances under which an employer can make a deduction from an employee's wage are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

58. Despite this, Cornwell made and continues to make numerous deductions from the wages of their misclassified Dealers. Defendant, for example, unlawfully deducts money for franchise fees, software licensing fees, lost, stolen, and returned equipment among other expenses.

59. Plaintiff and the Class are entitled to recover their damages, penalties,

interest, costs, and attorneys' fees based on Cornwell's violations.

**<u>THIRD CAUSE OF ACTION</u>**

**Failure to Provide Accurate Wage Statements—**

**Lab. Code, § 226 and 226.3 and Wage Order 1, § 7**

60. Plaintiff incorporates by reference every allegation contained above.

61. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

62. The purpose of Labor Code section 226 is to ensure the employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

63. Cornwell violated the above statute by, among other things, failing to provide accurate gross and net wages earned and hours worked on a paystub to Dealers.

64. Cornwell's violations of section 226, and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiff, seeks damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

**<u>FOURTH CAUSE OF ACTION</u>**

**Failure to Provide Overtime—**

**Lab. Code, § 510 and Wage Order 1, § 3**

65. Plaintiff incorporates by reference every allegation contained above.

66. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

67. Labor Code, section 510, and Wage Order 1, section 3 require overtime pay of at least 1.5 times an employee's regular rate of pay for all hours worked over 8

in a day or 40 in a week.

68. Dealers work well over 8 hours per day and well over 40 hours per week in line with Cornwell's expectations and standards as necessary to complete the work assigned to them by Cornwell. Despite this, they receive no overtime pay in violation of California law.

69. There is no exemption to the overtime laws applicable to Dealers. Once properly allocated, Dealers spend less than half of their time on sales-related activities as defined by applicable California law and Dealers are therefore not exempt from overtime pay.

70. Cornwell is liable to Plaintiff and the Class for unpaid overtime, interest, reasonable attorney's fees and costs, and any related statutory penalties.

## FIFTH CAUSE OF ACTION

### Failure to Provide Meal Periods—
### Lab. Code § 226.7 and Wage Order 1, § 11

71. Plaintiff incorporates by reference every allegation contained above.

72. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

73. Under Labor Code, sections 226.7 and 512, as well as applicable IWC Wage Orders, employers must provide a 30-minute uninterrupted, off-duty meal period for each work shift of more than five hours. Depending on hours worked, a second meal periods may be owed as well. Where adequate meal periods are not provided, employees are entitled to one hour's compensation at their regular rate of pay.

74. Cornwell does not provide for uninterrupted meal periods for its Dealers and provides no such compensation in lieu of these breaks as required by law. And Dealers have not otherwise waived their entitlement to meal breaks.

75. As a proximate result of Defendant's unlawful conduct, the Class sustained damages and are entitled to recover unpaid wages, liquidated damages,

interest, applicable penalties, attorneys' fees, and costs.

**SIXTH CAUSE OF ACTION**

**Failure to Provide Rest Breaks—**

**Lab. Code, § 226.7 and Wage Order 1, § 12**

76. Plaintiff incorporates by reference every allegation contained above.

77. Mr. Florea brings this cause of action as a Class action on behalf of himself and the Class.

78. Pursuant to Labor Code, sections 226.2 and 226.7, as well as applicable IWC Wage Orders, employers must provide a 10-minute uninterrupted, off-duty rest break for each work shift of 3.5 hours or more. Depending on hours worked, a second rest break may be owed. During these periods, an employer must relieve the employee of all duties and relinquish all control over how an employee spends his/her time. Such rest breaks are to be paid. Where a rest break is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

79. Cornwell failed to provide for rest breaks or pay Dealers for rest breaks if taken. Cornwell also failed to pay compensation in lieu of these paid breaks.

80. As a proximate result of Defendant's unlawful conduct, the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**

**Failure to Pay Wages—**

**Lab. Code, §§ 1194, 1197 and Wage Order 1**

81. Plaintiff incorporates by reference every allegation contained above.

82. Mr. Florea bring this cause of action as a Class action on behalf of himself and the Class.

83. California law requires that an employer compensate an employee for each hour worked. (See Lab. Code, §§ 1194, 1197, 1198 and Wage Order 1.) Agreements to work for less or no money are not permitted.

84. Dealers only receive compensation when they sell a product. They make the difference between the price Cornwell sets for the customer for the product and the price Cornwell tells the Dealer he must pay Cornwell for the tool. This is in effect a piece rate. No compensation is paid for any non-tool sales time as described above. Thus, Cornwell is not paying Dealers for all hours worked in violation of California law.

85. Mr. Florea and the Class are entitled to recover their damages (including liquidated damages under Labor Code, section 1194.2) penalties, interest, costs, and attorneys' fees based on Cornwell's violations.

## EIGHTH CAUSE OF ACTION

### Unfair Business Practices—

### Bus. & Prof. Code, § 17200 et seq.

86. Plaintiff incorporates by reference every allegation contained above.

87. Cornwell knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

b. Intentionally misclassifying its employee Dealers as "independent contractors;"

c. Imposing unreimbursed business expenses on and illegally deducting wages from misclassified employees in violation of Labor Code, sections 221 and 2802;

d. Failing to pay overtime to Dealer employees;

e. Failing to pay Dealers for each hour worked;

f. Failing to provide adequate meal and rest breaks to Dealers; and

g. Failing to provide accurate pay statements to Dealers in violation of Labor Code, section 226.

88. Further, Cornwell intends to enforce arbitration and forum selection clauses against Plaintiff that are illegal and otherwise violate California public policy.

89. Cornwell intended to, and did, profit from these illegal acts.

90. As a direct and proximate result of the above, Plaintiff and the Class have lost money or property, thereby entitling these individuals to restitution.

91. Pursuant to the Business and Professions Code, Plaintiff and Class Members are entitled to restitution of money or property acquired by Defendant by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

92. Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Cornwell's ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiff seeks such public injunctive relief here prohibiting Cornwell from continuing its illegal practice of misclassifying Dealers, including Mr. Florea, and denying them the benefit of important wage laws.

93. If Cornwell is not enjoined from engaging in the unlawful business practices described above, Plaintiff, Class members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

94. The Class, including Mr. Florea, have no plain, speedy, and adequate remedy at law.

95. Cornwell will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiff, the Class, and of the public, if not enjoined by this Court.

96. The success of Plaintiff in this action will result in the enforcement of important rights affecting public interest by conferring a significant benefit upon the public.

97. Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiff is therefore entitled to an award of attorneys'

fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

**NINTH CAUSE OF ACTION**

**Declaratory Relief**

98. Plaintiff incorporates by reference every allegation contained above.

99. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

100. An actual, present, and justiciable controversy exists between Plaintiff and Cornwell concerning their respective rights and duties. Plaintiff alleges that no enforceable arbitration agreement or forum-selection agreement exists between them, and the purported arbitration and forum-selection clause in the Dealer Franchise Agreement signed by Plaintiff is void and unenforceable for many independent reasons as outlined above.

101. Pursuant to its authority under the Declaratory Judgment Act, this Court should therefore enter a judgment declaring that the clauses requiring arbitration of controversies exclusively in Cornwell's home state are void and unenforceable, or otherwise that the Dealer Franchise Agreement between Plaintiff and Cornwell referenced by this Complaint does not contain an enforceable arbitration or forum selection agreement.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendant, as follows:

1. For an order certifying the Class as described herein, appointing Plaintiff as class representative, and his counsel as class counsel;
2. For compensatory damages according to proof;
3. For pre-judgment and post-judgment interest where allowable;
4. For costs of suit;
5. For injunctive relief, including public injunctive relief from ongoing

wage violations contrary to the public interest, as described herein;

6. For restitution as described herein;

7. For declaratory relief as described herein;

8. For punitive damages, where appropriate;

9. For reasonable attorneys' fees and costs; and

10. For such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted:

Dated: December 11, 2025

**NICHOLAS & TOMASEVIC, LLP**

By: */s/ Shaun Markley*

Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
Andrew J. Kubik (SBN 246092)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org
Email: akubik@nicholaslaw.org

Attorneys for GEORGE FLOREA, on behalf of himself and all others similarly situated